UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEAN F.,[1]

                    Plaintiff,

        v.

KILOLO KIJAKAZI, et al.,

                    Defendants.

Case No.  23-cv-05258-AMO

**ORDER GRANTING REVERSAL OF SOCIAL SECURITY COMMISSIONER'S FINAL DECISION AND DENYING REQUEST FOR AFFIRMANCE OF DENIAL OF SOCIAL SECURITY BENEFITS**

Re: Dkt. Nos. 11, 12

Plaintiff Sean F. seeks reversal of the Social Security Administration Commissioner's final administrative decision denying his application for benefits under Title XVI of the Social Security Act and remand of this case in accordance with 42 U.S.C. § 405(g).  The Commissioner asks that the Court affirm the decision.  For the reasons stated below, the Court **GRANTS** Plaintiff's request to reverse the Commissioner's unfavorable decision and **DENIES** the Commissioner's request to affirm the denial of benefits, and remands for further proceedings consistent with this order.

I.      BACKGROUND

On February 21, 2020, Plaintiff protectively filed applications[2] for Social Security

---

[1] The Court partially redacts Plaintiff's name to mitigate privacy concerns.  *See Heather L. v. Saul*, No. 19-CV-02483-SI, 2020 WL 3504468, at *1 n.1 (N.D. Cal. June 29, 2020) (citing Fed. R. Civ. P. 5.2(c)(2)(B)).

[2] "Protective filing is a Social Security term for the first time [a claimant] contact[s] the Social Security Administration to file a claim for disability or retirement.  Protective filing dates may allow an individual to have an earlier application date than the actual signed application date.  This is important because protective filing often affects the entitlement date for disability and retirement beneficiaries along with their dependents." *Burnham v. Berryhill*, No. 17-CV-05476-JCS, 2019 WL 1332397, at *1 n.2 (N.D. Cal. Mar. 25, 2019) (internal quotations and citation omitted).

1   Disability Insurance ("SSDI") benefits under Title II of the Social Security Act and for

2   Supplemental Security Income ("SSI") under Title XVI of the Act. Administrative Record ("AR")

3   (Dkt. No. 10) at 20. In support of the applications, Plaintiff submitted a disability report[3] and a

4   third-party function report.[4] *Id.* at 338-340, 350-357, 369-371, 387-393.

5          In the disability report, Plaintiff identified the following conditions as limiting his ability to

6   work: bone infection, blood clots in brain, mild nonproliferation diabetic retinopathy of both eyes,

7   diabetes mellitus type 2, cranial nerve disorder, fear of social situations. *Id.* at 343.[5] He indicated

8   that he has not developed any new physical or mental conditions between his February 2020 report

9   and his May 2021 report, but indicated that in approximately January 2021 he experienced

10  "changes/decrease in vision due to diabetes and prior [brain] clot." *See id.* at 373. In his list of

11  medications, Plaintiff indicated that as of May 2021, he was taking Insulin and Metformin for

12  diabetes and Kolonopin and Zoloft for anxiety/panic disorder. *Id.* at 375-376.

13         In the third-party function report, Plaintiff's father described how Plaintiff's illnesses,

14  injuries, or conditions limited his ability to work as follows: "He is afraid of going outside. He

15  has very poor vision due to blood clots. His hand is swollen + he can't grip or close hand fully."

16  *Id.* at 379. Plaintiff's father indicated Plaintiff's illnesses, injuries, and conditions affected his

17  ability to lift, hear, see, remember, concentrate, and use his hands, as he "can lift about 3 lbs with

18  his right hand" but "can't grip," and has "impaired vision from blood clots and diabetes." *Id.* at

19  384. Plaintiff's father notes Plaintiff's ability to follow written instructions is fair, his ability to

20

21  ─────────────────────

22  [3] The Administration uses the information a claimant provides in a disability report to decide
    whether the claimant is disabled. *See* Form SSA-3368-BK, Soc. Sec. Admin. Forms, available at

23  https://www.ssa.gov/forms/ssa-3368-bk.pdf (last visited Sept. 30, 2025).

24  [4] A function report, whether from the claimant or from a third-party who knows the claimant, is a
    form the Administration uses to obtain information about the claimant's activities and

25  abilities. *See* Form SSA-3373-BK, Soc. Sec. Admin. Forms, available at
    https://www.ssa.gov/forms/ssa-3373-bk.pdf (last visited Sept. 30, 2025); *see also* Form SSA-

26  3380-BK, Soc. Sec. Admin. Forms, available at https://www.ssa.gov/forms/ssa-3380.pdf (last

27  visited Sept. 25, 2025).

28  [5] Plaintiff filed his initial disability report on February 21, 2020, *see id.* at 338, which was updated
    on May 7, 2025, *see id.* at 369.

United States District Court
Northern District of California

1   follow spoken instructions is good, and his ability to get along with authority figures is very good.

2   *Id.* at 384-385.  Before Plaintiff's illness, Plaintiff's father indicates Plaintiff was "able to work,

3   grip, lift, see normally," "go outside + socialize with other people, [and] drive," and "was always

4   outside doing different things."  *Id.* at 380, 384.  Plaintiff's father indicates he now has a social

5   phobia and is "paranoid to go outside" and "panics when outside the condo" where he lives with

6   his mother and father.  *Id.* at 382.  Plaintiff "has to be told to bathe."  *Id.* at 380-381.

7        Plaintiff's conditions began in October 2018, when he was hospitalized for approximately

8   two months to be treated for methicillin-resistant staphylococcus aureus bacteremia, optic nerve

9   palsy, and diabetic ketoacidosis, resulting in septic sinus thrombosis and skull-base osteomyelitis.[6]

10  *Id.* at 481, 483, 485.  Plaintiff is legally blind in his left eye and suffers from diabetic retinopathy

11  in his right eye.  *Id.* at 441.  In March 2020, Plaintiff was seen by ophthalmologist Dr. Jong Goel

12  Park for blurry vision in his right eye and cranial nerve palsies in his left eye.  *Id.* at 485.  Dr. Park

13  observed that the swelling Plaintiff had experienced since September 2019 was somewhat

14  reduced.  *Id.* at 486.  However, Dr. Park noted that despite two Eylea injections in his right eye in

15  the previous four months, Plaintiff's vision had not improved.  *Id.* at 485.  Plaintiff had a cataract

16  in his right eye, but Dr. Park did not recommend surgery until the diabetic macular edema present

17  in that eye was stable for a minimum of three months.  *Id.* at 586.  In July 2020, ophthalmologist

18  Dr. Quan Dong Nguyen noted there remained a "suboptimal response" and identified the need to

19  "consider other therapeutic options."  *Id.* at 600.  Plaintiff reported "deteriorating vision" in

20  September 2020.  *Id.* at 588.  In February 2021, Dr. James Cohn performed an eye evaluation on

21  Plaintiff on behalf of the Social Security Administration.  *Id.* at 1881-1884.  Dr. Cohn provided

22  raw data and handwritten abbreviated notations, and did not provide a narrative report or

23  functional limitations.  *See id.*

24        In March 2021, Plaintiff reported at an appointment that his vision was "a little worse in

25  both eyes for the past few months."  *Id.* at 1888.  In June 2021 and August 2021, Plaintiff received

26  additional injections in his right eye, and reported "[n]o significant vision improvement" in

27

28  ───────────────
    [6] This Order does not detail the record evidence regarding Plaintiff's social phobia and hand
    condition as it is not necessary for the Court's decision.

3

United States District Court
Northern District of California

August and September 2021, but slight improvement in November 2021. *Id.* at 1951-1952. In November 2021, Dr. Nguyen again advised to postpone a cataract evaluation as the edema was still present. *Id.* at 1953. In February 2022, Dr. Nguyen noted Plaintiff reported his vision was "stable in both eyes" and he had "not noticed any improvement or any worsening" since his previous visit in December 2021. *Id.* at 2076. Dr. Nguyen further noted that Plaintiff "[e]ndorses glare with bright lights and feels temporarily blinded in bright sunlight," and that he "does not drive due to his vision." *Id.* Cataract evaluation and treatment continued to be postponed as the edema remained present, and Dr. Nguyen recommended that if the edema did not improve substantially by Plaintiff's next visit, he would consider an alternative treatment – intravenous interleukin-6 inhibitor – in "an effort to control the significant diabetic macular edema for the patient." *Id.* at 2079. In March 2022, Dr. Nguyen opined that Plaintiff's visual impairments would impact his ability to safely perform full-time work due to symptoms including "fluctuation of vision and severe decreased blurred vision," reiterating that Plaintiff "endorses glare with bright light and feels temporary blindness in bright light," and noting Plaintiff was not capable of avoiding ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles, that Plaintiff did not have difficulty walking up or down stairs, and that Plaintiff could not work with small or large objects. *Id.* at 2078-2088.

On March 19, 2021, the Social Security Administration denied Plaintiff's applications on initial review. *Id.* at 147-155. Plaintiff sought reconsideration. *Id.* at 156. On July 9, 2021, the Administration denied the applications on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was set for April 11, 2022 and held over telephone. *Id.* at 170, 202-226. ALJ Jeannine Lesperance heard testimony from Plaintiff, as well as a vocational witness, Carmen Roman. *Id.* at 20. Plaintiff withdrew his request for a hearing as to the Title II application, and the ALJ dismissed the Title II claim. *Id.* at 21.

On June 8, 2022, the ALJ issued a decision. *Id.* at 17-31. Following the five-step sequential process that governs Social Security disability determinations,[7] the ALJ determined that

---

[7] The Social Security Administration's regulations set forth a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The

1   Plaintiff is not disabled.  *Id.* at 20.  While the ALJ found Plaintiff was unable to perform any past

2   relevant work – he had previously worked as a transmission mechanic and automobile mechanic –

3   she found he was not disabled as other occupations existed in significant numbers in the national

4   economy that Plaintiff would be able to perform.  *Id.* at 31.

5          On August 23, 2022, Plaintiff requested review of the ALJ's decision by the Appeals

6   Council.  *Id.* at 434-436.  The Appeals Council denied Plaintiff's request for review on August 17,

7   2023, making the ALJ's unfavorable decision the final decision of the Commissioner.  *See id.* at

8   1-4.

9          On October 13, 2023, Plaintiff filed this action for judicial review under 42 U.S.C.

10  § 405(g).  Dkt. No. 1.  On September 13, 2024, Plaintiff filed his opening brief seeking reversal of

11

12  relevant inquiry at each step is as follows:

13              1.      Is claimant presently working in a substantially
14      gainful activity? If so, then the claimant is not disabled within the
        meaning of the Social Security Act.  If not, proceed to step two.  *See*
15      20 C.F.R. §§ 404.1520(b), 416.920(b).
                2.      Is the claimant's impairment severe?  If so, proceed
16      to step three. If not, then the claimant is not disabled.  *See* 20 C.F.R.
        §§ 404.1520(c), 416.920(c).
17              3.      Does the impairment "meet or equal" one of a list of
18      specific impairments described in 20 C.F.R. Part 220, Appendix 1?
        If so, then the claimant is disabled.  If not, proceed to step four.  *See*
19      20 C.F.R. §§ 404.1520(d), 416.920(d).
                4.      Is the claimant able to do any work that he or she has
20      done in the past?  If so, then the claimant is not disabled.  If not,
21      proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
                5.      Is the claimant able to do any other work?  If so, then
22      the claimant is not disabled.  If not, then the claimant is disabled.
        *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
23

24  *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  The claimant has the burden of
    proof at steps one through four, and the Commissioner has the burden of proof at step five.
25  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Nonetheless, at every step of the inquiry,
    the ALJ has an affirmative duty to assist the claimant in developing the record.  *Id.* at 1098 n.3.
26  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no
    need to consider subsequent steps."  *Id.*  "Between the third and fourth steps, [the] ALJ determines
27  a claimant's residual functional capacity, i.e., the extent of mental and physical activities a
    claimant can perform in a work setting despite their limitations."  *Nadon v. Bisignano*, 145 F.4th
28  1133, 1135-36 (9th Cir. 2025).

the Commissioner's denial of Title XVI benefits and remand of the matter for further proceedings. Dkt. No. 11 ("Op. Br."). The Commissioner filed its responsive brief on October 15, 2024. Dkt. No. 12 ("Resp. Br."). Plaintiff's reply brief followed on October 29, 2024. Dkt. No. 13 ("Reply Br.").

## II.    LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), district courts have authority to review a decision by the Commissioner denying a claimant's application for disability benefits. "Th[e] court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citation omitted). It is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (citations omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotations omitted). "If the evidence can reasonably support either affirming or reversing the Commissioner's decision, [the court] may not substitute its judgment for that of the Commissioner." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and quotation marks omitted). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## III.    DISCUSSION

The parties raise four issues in this appeal. First, whether the ALJ's finding of Plaintiff's residual functional capacity is supported by substantial evidence. Op. Br. at 5. Second, whether

1    the ALJ erred by finding not credible Plaintiff's statements about the limits to his daily activities,

2    his presentation during telehealth visits, and his statements regarding social phobia and hand

3    limitations. *Id.* Third, whether the ALJ erred by disregarding Plaintiff's father's statement

4    regarding Plaintiff's hand condition and social phobia. *Id.* Fourth, whether the ALJ failed in their

5    duty to develop the record. *Id.* The Court begins by addressing Plaintiff's argument that the

6    ALJ's finding of Plaintiff's residual functional capacity is not supported by substantial evidence,

7    and finding that it is not, the Court addresses the proper remedy.

8         **A.    Residual Functional Capacity**

9         Plaintiff argues the residual functional capacity formulated by the ALJ was not supported

10    by substantial evidence. Op. Br. at 12-13. A claimant's residual functional capacity is defined as

11    "the most [the claimant] can do despite [their] limitations." 20 C.F.R. § 416.945(a)(1). It "is used

12    at step four to determine if a claimant can do past relevant work and at step five to determine if a

13    claimant can adjust to other work." *Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024)

14    (citing 20 C.F.R. § 416.920(e)). Here, the ALJ found that Plaintiff

> has the residual functional capacity to perform a range of "light"
> work as defined in 20 CFR 404.1567(b) and 416.967(b).
> Specifically, he could occasionally lift 20 pounds and frequently lift
> 10 pounds using both hands but lift no more than 10 pounds while
> using the right hand alone. There are no limitations in sitting,
> standing, or walking. The claimant can frequently handle and finger
> with the right hand, but tasks should not require power grasping
> (grasping with a forceful, tight fist), for example, as might be
> needed to use a screwdriver for loosening a tight screw. Visually,
> the claimant can perform tasks that do not require precise depth
> perception, such as is required to thread a needle, or peripheral
> vision on the left. He can work with objects the size of a nickel or
> larger. He can occasionally read but should not be required to read
> fine print. He cannot work in bright sunlight, but he can use a
> screen such as a computer occasionally, with such work spread
> evenly throughout the day.

25    AR 25-26. The ALJ found that Plaintiff's residual functional capacity prevented him from

26    resuming prior work as a transmission mechanic and automobile mechanic (step four), but

27    determined he could pursue additional occupations – office worker, merchandise marker, and

28    laundry worker – with the limitations identified (step five). *Id.* at 31, 87. The ALJ therefore

United States District Court
Northern District of California

United States District Court
Northern District of California

1    determined Plaintiff was not disabled.  *Id.* at 31.

2           In arguing the residual functional capacity formulated by the ALJ was not supported by

3    substantial evidence, Plaintiff points to several purported deficiencies.  The Court begins with

4    Plaintiff's argument that the ALJ erred in assessing his visual limitations.  In their decision, the

5    ALJ found Plaintiff had "severe" impairments of left eye limited visual acuity (due to skull base

6    osteomyelitis and cranial nerve palsy) and right eye proliferative diabetic retinopathy, macular

7    edema, and cataract.  *Id.* at 22, 28.  Ultimately, however, the ALJ determined Plaintiff's vision is

8    only "slightly abnormal" in the right eye, *id.* at 28, and found Plaintiff had limited peripheral

9    vision only in his left eye, *id.* at 29 ("Visually, the claimant can perform tasks that do not require

10   . . . peripheral vision on the left.").  The ALJ acknowledged that Dr. Nguyen noted the best-

11   corrected visual acuity for Plaintiff's left eye was 20/250 – which made him legally blind in that

12   eye – and 20/60 for his right eye.  *Id.* at 27.

13          Plaintiff argues the ALJ erred in relying "exclusively on a few visual acuity

14   measurements" and on no other objective tests or measurements.  Op. Br. at 13.  This was

15   improper, Plaintiff argues, because while visual acuity measures the distance at which one can

16   distinguish letters and symbols, it does not measure other important visual factors, including depth

17   perception, peripheral vision, or eye strain.  Op. Br. at 13.  The residual functional capacity

18   includes a limitation on peripheral vision in Plaintiff's left eye, but the record does not support that

19   his peripheral vision is impaired only in his left eye.  In fact, Dr. Nguyen noted Plaintiff's

20   peripheral vision was limited in both eyes.  AR 43 ("The visual acuity only reflects central vision.

21   The diabetic retinopathy also affects the peripheral vision of the patient.").  Finally, the ALJ noted

22   that Plaintiff's provider "reported objective improvement" of Plaintiff's vision following Ozurdex,

23   an implant performed in the right eye in December 2021.  AR 28.  However, the record reflects

24   that many objective reports of improvement were reports of "slight" or "minimal" improvement,

25   and there were also many objective reports reflecting that Plaintiff's vision had worsened.  *See* AR

26   2077-2079 (treatment notes indicating "minimal improvement" of Plaintiff's diabetic macular

27   edema on January 28, 2020; "worse" on July 7, 2020; "continued [diabetic macular edema] though

28   better than 7/7/2020" on March 2, 2021; "stable to slightly improved parafoveal intraretinal cysts"

1    on August 10, 2021; "stable to slightly worse parafoveal intraretinal cysts" on September 28,

2    2021; same on November 9, 2021; "stable to slightly improved parafoveal intraretinal cysts" on

3    November 16, 2021 and December 15, 2021; "minimal improvement after Ozurdex injection" on

4    February 7, 2022).  Plaintiff's diabetic macular edema was consistently significant such that his

5    cataracts could not be evaluated or treated.  *See* AR 644, 1889, 1893, 2078-79.

6            The Commissioner disputes Plaintiff's contention that the residual functional capacity is

7    not supported by substantial record evidence, but the Commissioner's arguments are largely that

8    any error is harmless.  *See* Resp. Br. at 3-4.  The Commissioner does not address Plaintiff's

9    argument that, considering the record in its entirety, there is no substantial evidence of lasting or

10   significant "objective improvement" in Plaintiff's vision from the treatments he received.  Indeed,

11   the Commissioner's discussion regarding the severity of Plaintiff's vision impairments is limited

12   to evidence regarding subjective complaints, not objective observations in the record.  The

13   Commissioner thus concedes that the record does not support a finding of objective improvement

14   in Plaintiff's vision.  *See Lloyd B. v. O'Malley*, No. 23-CV-05010-DMR, 2024 WL 4557333, at *4

15   (N.D. Cal. Oct. 22, 2024) ("The Commissioner does not respond to this argument in his motion

16   and thus concedes it.").  The Court therefore concludes that the ALJ's formulation of the residual

17   functional capacity, which focused on visual acuity measurements and was based on her finding

18   that Plaintiff experienced "objective improvement," was not based on substantial evidence.

19           Plaintiff argues that remand is proper for the ALJ to craft a residual functional capacity

20   with limitations based on substantial evidence, rather than based on the ALJ's lay conjectures.

21   Op. Br. at 14.  The Commissioner argues that at most, the ALJ committed harmless error, because

22   none of Plaintiff's claimed errors – if corrected – would alter the ALJ's ultimate determination

23   regarding the occupations available to Plaintiff, and therefore, would not impact the ultimate

24   disability determination.  However, it is far from clear, as the Commissioner claims, "that the

25   ALJ's error was inconsequential to the ultimate nondisability determination."  *See Tommasetti*,

26   533 F.3d at 1038.  For purposes of this appeal, then, the error is not harmless.

27           "At step five, the ALJ can call upon a vocational expert to testify as to: (1) what jobs the

28   claimant, given his or her residual functional capacity, would be able to do; and (2) the availability

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    of such jobs in the national economy." *Tackett*, 180 F.3d at 1101.  During the hearing, the ALJ

2    poses hypothetical questions to the vocational expert "that 'set out all of the claimant's

3    impairments' for the vocational expert's consideration."  *Id.*  Here, the ALJ presented the

4    vocational expert, Carmen Roman, with Plaintiff's residual functional capacity.  Roman testified

5    that a hypothetical individual with the limitations described in the ALJ's residual functional

6    capacity could perform the work of three occupations – office worker, merchandise marker, and

7    laundry worker – and the Commissioner notes that none of them require threading needles,

8    working with small objects, or exposure to fluorescent lights.  Resp. Br. at 3.[8]  Further, the

9    category "Field of Vision" for the occupations is listed as "Not Present – Activity or condition

10   does not exist."  *Id.* at 4.  "Field of vision" is defined as the "entire area that can be seen when the

11   eye is directed forward, including that which is seen with peripheral vision."  *Id.*  The

12   Commissioner thus argues that because "peripheral vision is not a component of the identified

13   jobs, any error in including this limitation in the [residual functional capacity] is harmless."  *Id.*

14           However, "[h]ypothetical questions asked of the vocational expert must 'set out all of the

15   claimant's impairments.' "  *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (citing *Gamer v.*

16   *Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1278 (9th Cir. 1987)).  This is because "[i]f a

17   vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's

18   testimony has no evidentiary value to support a finding that the claimant can perform jobs in the

19   national economy."  *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Here, the ALJ's

20   consideration of the evidence of Plaintiff's limited peripheral vision in his right eye, as well as his

21   left, could result in modification to Plaintiff's residual functional capacity or the vocational

22   expert's testimony regarding work Plaintiff would be capable of performing.  *See Stephan v.*

23   *Kijakazi*, No. 22-CV-06021-SK, 2023 WL 7284144, at *10 (N.D. Cal. Nov. 3, 2023) (finding

24   ALJ's failure to properly consider Plaintiff's mental health testimony was not harmless error

25   _____

26   [8] The occupation of Office Helper involves tasks such as furnishing workers with clerical supplies,
     handling incoming and outgoing mail, and collecting and distributing paperwork from one
27   department to another.  *See* 239.567-010 Office Helper, DICOT 239.567-010, 1991 WL 672232.
     The occupation of Merchandise Marker involves attaching price tickets to articles of merchandise
     and tying, gluing, sewing, or stapling price tickets to articles.  209.587-034 Marker, DICOT
28   209.587-034, 1991 WL 671802.

where, "were the ALJ to fully credit Plaintiff's mental health testimony and incorporate it into the RFC, a more restrictive RFC would be certain and would possibly change the ultimate disability determination"); *see also Martin v. Colvin*, No. CV 12-5693 MRW, 2013 WL 2139550, at *3 (C.D. Cal. May 15, 2013). Accordingly, the Court cannot find the error was harmless. The Court therefore need not consider Plaintiff's other arguments to determine he is entitled to relief. *See Heiser v. Berryhill*, No. 17-CV-05991-RMI, 2019 WL 1367415, at *7 (N.D. Cal. Mar. 26, 2019) (citing *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.")).

### B.    Remedy

The Social Security Act permits the district court to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595 (citations omitted). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met: (1) "the AC failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion," (2) there are no "outstanding issues that must be resolved before a disability determination can be made" and further administrative proceedings would serve no useful purpose, and (3) when considering the record as a whole and crediting the improperly discounted testimony as true, there is no doubt as to disability. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Even if all three criteria are met, the decision to remand for an award of benefits or remand for further proceedings is within the district court's discretion. *Id.*

"The Court does not find that this is the exceptional case where remand for the immediate award of benefits is appropriate." *S.M. v. Comm'r of Soc. Sec.*, No. 24-CV-06297-NC, 2025 WL 1527761, at *8 (N.D. Cal. May 29, 2025). It is not clear that the ALJ would be compelled to find Plaintiff disabled, even if the issues identified herein are resolved in Plaintiff's favor. Accordingly, remand for further proceedings is appropriate. *See Leon*, 880 F.3d at 1047-48; *see also Dominguez v. Colvin*, 808 F.3d 403, 408-10 (9th Cir. 2015) (finding remand appropriate so

the ALJ could determine how alleged impairments affected the claimant's residual functional capacity and resolve inconsistencies between physician's opinions and treatment notes); *Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) (remanding where the inconsistencies between the claimant's testimony and the medical evidence in the record raised crucial questions as to the extent of the claimant's impairments).

## IV.    CONCLUSION

For the foregoing reasons, the Court reverses the Commissioner's decision and denies the Commissioner's request to affirm the denial of benefits.  The matter is remanded for further proceedings consistent with this order.


        **IT IS SO ORDERED.**

Dated: September 30, 2025


                                                    _____
                                                    **ARACELI MARTÍNEZ-OLGUÍN**
                                                    **United States District Judge**